ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
U.S. Courthouse, 14th Floor
312 N. Spring Street
Los Angeles, CA 90012
Telephone: (213)894-6166
Facsimile: (213)894-7177

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>206 FIREARMS and 41,725 rounds of assorted ammunition;<br><br>Defendants. | NO. CV 09-9235 MMM (AGRx)<br><br>**PLAINTIFF'S OPPOSITION TO MOTIONS TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS**<br><br>DATE: September 13, 2010<br>TIME: 10:00 am<br>CTRM: 780 (Roybal) |
| STEVE MITCHELL, ET AL.,<br><br>Claimants | |

/ / /

/ / /

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . 2

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Illegal Sales to Prohibited Persons by Claimant. . . . . . . . 4

False Statements on Theft/Loss Report. . . . . . . . . . . . . 6

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. The Complaint States A Valid Claim. . . . . . . . . . . . . 7

1. *The Allegations Of The Complaint Establish A Reasonable Belief That The Government Will Be Able to Satisfy Its Burden of Proof*. . . . . . . . 7

a. The proper pleading standard is set out in Supplemental Rule G. . . . . . . . . . . . . . . . 7

b. The allegations of the Complaint are sufficient to state a claim. . . . . . . . . . 11

2. *The Authorities Relied Upon By Claimant Are Distinguishable*. . . . . . . . . . . . . . . . . . 13

3. *The Legislative Amendments to § 924 Do Not Affect the Analysis Here* . . . . . . . . . . . . . 15

4. *Claimant's Construction of § 924(d) Would Render Portions of the Statute Meaningless*. . . . . . . 18

5. *The Allegations in Count One of the Complaint Are Sufficient to Allege a Violation of 18 U.S.C. § 922(d)*. . . . . . . . . . . . . . . . . . . . . . . 18

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**TABLE OF AUTHORITIES**

**FEDERAL CASES** **PAGE**

*Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336 (9th Cir. 1996) .................................. 2

*Consumer Prod. Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980) ...................................... 16

*Duncan v. Walker*, 533 U.S. 167 (2001) ...................................... 18

*Frey v. Bank One*, 91 F.3d 45 (7th Cir. 1996) .................................. 1

*Gallardo v. Board of County Commissioners*, 857 F. Supp. 783 (D. Kan. 1994) ............................ 2

*General Conference Corp. Of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228 (9th Cir. 1989) ............................... 2

*Griffith Co. V. N.L.R.B.*, 545 F.2d 1194 (9th Cir. 1976) .............................. 9

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1989) .............................. 1

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) .............................. 2

*TRW, Inc. v. Andrews*, 534 U.S. 19 (2001) ....................................... 18

*United States v. $79,650*, 2009 WL 331294 (E.D. Va. 2009) ........................... 10

*United States v. 1,922 Assorted Firearms*, 330 F. Supp. 635 (E.D. Mo. 1971) .......................... 15

*United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1 (D.D.C. 2008) .......................... 10

*United States v. All Funds . . . Held in the Name of Kobe Alexander*, 2007 WL 2687660 (E.D.N.Y. 2007) .......................... 11

*United States v. Approximately 627 Firearms More or Less*, 589 F. Supp. 2d 1129 (S.D.Iowa 2008) ..................... 14

*United States v. Eighty-Six Firearms and Twenty-Two Rounds of Ammunition*, 623 F.2d 643 (10th Cir. 1980) .................... 13, 14, 15

*United States v. Fifty-Two Firearms*, 362 F. Supp. 2d 1308 (M.D. Fla. 2005) ............ 17, 18, 19

*United States v. Johnson Controls, Inc.*, 457 F.3d 1009 (9th Cir. 2006) ............................ 16

*United States v. Lopez-Burgos*, 435 F.3d 1 (1st Cir. 2006) ............................... 10

*United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002) ............................. 10

*United States v. One Assortment of 12 Rifles and 21 Handguns*, 313 F. Supp. 641 (D.C. Fla. 1970) ........................ 14

*United States v. One Assortment of 89 Firearms*, 511 F. Supp. 133 (D.S.C. 1980) ........................... 14

*United States v. One Assortment of Seven Firearms*, 632 F.2d 1276 (5th Cir. 1980) ............................ 14

*United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187 (9th Cir. 2004) ............................ 11

**FEDERAL STATUTES AND RULES**

18 U.S.C. § 921 *et seq*. .................................... 3

18 U.S.C. § 922 ............................................ 8

18 U.S.C. § 922(a)(1)(A) ................................. 14

18 U.S.C. § 922(d) .................................... passim

18 U.S.C. § 922(d)(1) ............................ 13, 18, 19

18 U.S.C. § 922(d)(2)(C) ............................ 7, 8, 9

18 U.S.C. § 922(g) ......................................... 3

18 U.S.C. § 922(g)(1) ..................................... 19

18 U.S.C. § 924 ........................................... 15

18 U.S.C. § 924(d) .................................... 14, 15

18 U.S.C. § 983 .......................................... 10

18 U.S.C. § 983(a)(3)(D) ................................. 10

28 U.S.C. § 2072 .......................................... 9

Fed.R.Civ.P 12(b)(6) .................................... 1, 2

Fed.R.Civ.P 12(c) .......................................... 1

Fed.R.Civ.P 12(f) ....................................... 1, 2

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions

Rule C ...................................................... 8

Rule E ................................................... 8, 10

Rule E(2) .................................................. 10

Rule G ................................................ 7, 8, 9

Rule G(1) ................................................... 8

Rule G(2) ................................................ 9, 10

Rule G(2)(f) ............................................. 9, 10

Rule G(8)(b) ................................................ 9

Rule G(8)(b)(ii) ........................................... 10

**MISCELLANEOUS**

H.R. Rep. 105-358(I), at 27 (1997) ........................ 10

S. Rep. No. 97-476, 97th Cong., 2d Sess., 15 (1982) ........... 16

S. Rep. No. 98-583, 98th Cong., 2d Sess., 24-25 (1984) ........ 17

Holbrook, Stephen P., *Firearms Law Desk Book*, § 2:10, p. 109 (Thomson/West) (2006) ..................... 19

I.

**INTRODUCTION**

Plaintiff United States of America (the "government") respectfully submits this memorandum of points and authorities in opposition to the motions of Claimant Stephen Mitchell ("Claimant") for judgment on the pleadings with regard to Counts I and II pursuant to Federal Rule of Civil Procedure 12(c)[1], and to strike portions of the Complaint pursuant to Rule 12(f).[2]

The material allegations of the government's Complaint, which must be accepted as true and construed in the light most favorable to the government for purposes of this motion, are that the defendant firearms and ammunition were involved in a pattern of illegal activity in which firearms and ammunition were offered for sale in knowing violation of federal law. The Complaint alleges that Claimant, the operator of a firearms retail store, knowingly made his inventory available for sale to persons whom he know or had reason to believe were prohibited from acquiring firearms and ammunition and, further, that Claimant and his employee actively assisted at least one prohibited person in concealing and disguising the true ownership of firearms and ammunition by permitting "straw purchasers" to complete the paperwork required when purchasing a firearm.

---

[1] A Rule 12(c) motion for judgment on the pleadings is governed by the same standards applicable to motions to dismiss under Rule 12(b)(6). *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996).

[2] Unless otherwise noted, all references herein to "Rule 12" refer to Rule 12 of the Federal Rules of Civil Procedure.

The facts alleged in the Complaint are more than adequate to refute Claimant's contention that the Complaint fails to allege sufficient facts to support a reasonable belief that the defendant firearms and ammunition are subject to forfeiture (the proper pleading standard in civil asset forfeiture actions). Moreover, Claimant has failed to identify any allegations of the Complaint that constitute "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Rule 12(f). Accordingly, Claimant's motions for judgment on the pleadings and to strike portions of the Complaint should be denied in their entirety.

## II.

## STATEMENT OF FACTS[3]

### Background

At the time of the seizure of the defendant firearms and ammunition, Claimant was a federally licensed firearms dealer (or federal firearm licensee - "FFL") with his business premises located at 15048 Bear Valley Road, Victorville, California.[4]

---

[3] The facts are taken from the allegations of the Complaint. In ruling on a motion for judgment on the pleadings, the Court should accept as true all material allegations in the Complaint (as well as all reasonable inferences to be drawn therefrom) and construe them in the light most favorable to the plaintiff. *General Conference Corp. Of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)(deciding Rule 12(b)(6) motion which applies identical standards). If a court determines that a Complaint is defective, the court should employ the same liberal standards in determining whether to permit a plaintiff to amend its Complaint in order to cure any defects raised by the motion. *Gallardo v. Board of County Commissioners*, 857 F. Supp. 783, 787 (D. Kan. 1994); *see also Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F. 2d 1393, 1401 (9th Cir. 1986).

[4] ATF denied Mitchell's subsequent application to renew his federal firearms license and he is no longer an FFL.

Mitchell conducted his firearms business under the name "Lock, Stock & Barrel". Complaint at ¶7.

Because of their nature, firearms are subject to unique and significant federal regulations. Among other things, FFLs are required to record their acquisition and disposition of every firearm in an acquisition and disposition ("A&D") record and to maintain the A&D record at their licensed business premises. For each firearm taken into inventory, the FFL is required to record the make, model, and serial number of the firearm; the date of acquisition; the name and address (or federal firearms license number) of the person from whom the firearm was acquired; the date on which the firearm was disposed of; and the name and address (or federal firearms license number or Form 4473 transaction number) of the person to whom the dealer transferred the firearm. Complaint at ¶10.

In addition to A&D records, an FFL is required to obtain a completed ATF Form 4473 (also known as a "Firearms Transaction Record") before the FFL can transfer or sell a firearm to any unlicensed person. An FFL may not complete a transfer to an unlicensed person without conducting a background check and recording the information on the Form 4473. Complaint at ¶11.

The Gun Control Act, 18 U.S.C. §921 *et seq.* ("GCA"), makes it unlawful for certain persons, including felons (*i.e.*, persons convicted in any court of a crime punishable by imprisonment for a term exceeding one year), unlawful drug users and illegal aliens, to possess firearms. 18 U.S.C. § 922(g). It also makes it unlawful for any person to sell or dispose of a firearm to someone he knows or has reason to believe is under indictment for

or has been convicted of an offense punishable by imprisonment for a term exceeding one year, or any other prohibited person. 18 U.S.C. § 922(d). The defendants here fall within the definition of firearms and ammunition as set out in the GCA. Complaint at ¶6.

Illegal Sales to Prohibited Persons by Claimant

In September 2007, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") received information from the California Department of Justice ("CADOJ") that a recent CADOJ inspection of Lock, Stock & Barrel (Claimant's business) revealed that the FFL might be permitting straw purchases and/or selling firearms to persons prohibited from possessing them. CADOJ also reported that Lock, Stock & Barrel was destroying records required to be maintained. ATF opened a criminal investigation into Lock, Stock & Barrel. *Id.* at ¶13.

A straw purchase occurs when the actual buyer of the firearm uses a third party (the straw purchaser) to execute the Form 4473 in order to create the false appearance that the straw purchaser is the actual purchaser of the firearm when, in fact, he or she is not. The FFL selling the firearm under these circumstances violates federal law if the FFL is aware of the false statements on the Form 4473 or has reason to believe he is disposing of the firearm to a person prohibited from possessing such firearm under federal law. *Id.* at ¶15.

From approximately November 2007 through December 2008, ATF used undercover agents and confidential informants ("CIs") to purchase firearms that could not lawfully be sold to the purchasers because they (the purchasers) purported to be or were

in fact prohibited from receiving or possessing firearms under federal law. *Id.* at ¶14. Lock, Stock & Barrel's storefront is a small store. Within the store there is a sales counter that runs along the eastern wall and then from east to west across the store, where the cash register is situated. Behind that counter is an approximately six foot cubicle type wall that separates the office and storage area to the rear from the customer service area. Sound travels well throughout the store. During all of the undercover agent and CI purchases, Mitchell was either at the front counter or behind the cubicle type wall. *Id.* at ¶18.

On at least one occasion, Mitchell personally allowed a straw purchaser to complete the Form 4473 for a CI, who Mitchell knew or had reason to believe was a convicted felon. During the course of that transaction, Mitchell indicated that he knew the convicted felon had obtained additional firearms from Lock, Stock & Barrel, and further indicated a future willingness to sell the CI additional firearms. *Id.* at ¶16.

Specifically, on September 10, 2008, Mitchell permitted CI-1, who is a convicted felon and who had previously straw purchased firearms from Lock, Stock & Barrel, to select a Hi-Point Model C9 9mm pistol to purchase. During the conversation with CI-1, Mitchell specifically noted that CI-1 had purchased similar firearms, asking CI-1, "Don't you have one or two of these?" CI-1 stated, "I've got to keep gettin' them," and Mitchell replied, "You have to keep on gettin' them." CI-1 asked, "Don't you know I already got some?" and Mitchell stated, "I know you got some." *Id.* at ¶19.

Mitchell then turned to CI-2 (the straw purchaser) and asked her, "You got your stuff?" and CI-2 replied, "Yeah." Mitchell asked, "You got the card and the license?" CI-2 stated, "Yeah, yeah," and provided a California Driver's License and a California State Handgun Safety Card. *Id.* at ¶20.

Mitchell asked CI-1, "That's all you want?" CI-1 stated, "That's it." CI-1 paid Mitchell $272.04 for the Hi-Point pistol. CI-1 stated, "Reminds me of my other gun. Pretty soon I'll open my own gun store with all the guns I bought from you." Mitchell replied, "You got a lot of 'em." *Id.* at ¶21.

Mitchell completed a store invoice using CI-2's name and information and retrieved a Form 4473, which he handed to CI-2. CI-2 filled out the Form 4473. Mitchell reviewed the completed Form 4473 and pointed out to CI-2 that she needed to fill in her county and place of birth, stating, "Your residence is California and put N/A there and N/A there." CI-1 stated, "You're giving us a lot of help." Mitchell stated, "Have to. Have to, when you're coming back." CI-1 stated, "Why do you think I'm back?" *Id.* at ¶22.

In addition to the various straw purchases made on behalf of CI-1, Mitchell had other reasons to suspect CI-1's prohibited status. On or about July 16, 2008, Mitchell offered to repair a firearm for CI-1 despite the CI's statement that he was afraid the firearm might have "murder on it." *Id.* at ¶28.

<u>False Statements on Theft/Loss Report</u>

In addition to its other record-keeping requirements, the GCA and its implementing regulations require FFLs to report any theft or loss of a firearm to ATF by preparing and submitting an

ATF Form 3310.11 (Federal Firearms Licensee Theft/Loss Report). Complaint at ¶12. On July 6, 2008, the San Bernardino County Sheriff's Department responded to an alarm at Lock, Stock & Barrel. The business had been broken into and a number of firearms stolen. On or about August 15, 2008, Mitchell's FFL filed a Form 3310.11 (Federal Firearms Licensee Theft/Loss Report) with ATF. In that report, Mitchell listed a number of firearms as stolen that were, in fact, not stolen and were later recovered by ATF during the execution of search warrants.

**III.**

**ARGUMENT**

**A. The Complaint States A Valid Claim**

1. *The Allegations Of The Complaint Establish A Reasonable Belief That The Government Will Be Able to Satisfy Its Burden of Proof*

Claimant asserts that the Count I of the Complaint "fails to satisfy the particularity requirement of 18 U.S.C. 924(d)(2)(C)" because it fails "to allege how a single one of the 206 firearms and 41,725 rounds of ammunition sought to be forfeited were intended to be used in the alleged violations of 922(d)" or "how they were involved and/or used in a willful violation." Claimant's Memorandum at 4. In making this argument, Claimant applies an erroneous standard and ignores the allegations of the Complaint.

a. The proper pleading standard is set out in Supplemental Rule G

Claimant argues that the complaint is flawed because it fails to satisfy what Claimant characterizes as a particularity of pleading requirement at 18 U.S.C. § 922(d)(2)(C). In fact,

even assuming that the cited provision contains an applicable pleading requirement, it is clearly satisfied by the allegations of and attachments to the Complaint because the only possible pleading requirement that can be read into § 922(d)(2)(C) is that the firearms and ammunition sought for forfeiture be "particularly named and individually identified." The defendants are identified in detail in Attachment A, and the allegations of the Complaint specifically identify the violations alleged to trigger the forfeiture sought.

Claimant's argument seems to be that the Complaint is required not only to identify the defendants and the basis for forfeiture, but to allege (1) facts sufficient to establish their forfeiture by clear and convincing evidence and (2) that each of the defendants was involved in an actual illegal transfer. These arguments are not sustainable.

To begin with, the pleading requirements applicable to civil forfeiture actions are established not by § 922, but by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). Rule G (1) (entitled "Scope") provides "[t]his rule governs a forfeiture action in rem arising from a federal statute. *To the extent that this rule does not address an issue*, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply." (Emphasis added). This limiting language makes clear that Rule G is the primary and, to the extent it addresses an issue, *exclusive* authority in civil in rem forfeiture actions. Among the issues specifically addressed in Rule G are the pleading requirements for complaints

and the circumstances under which complaints may be dismissed or otherwise disposed of at the pleading stage.

Pursuant to Rule G(8)(b), "[t]he sufficiency of the complaint is governed by Rule G(2)," which provides that the complaint must:

> (a) be verified;
>
> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
>
> (c) describe the property with reasonable particularity;
>
> (d) if the property is tangible, state its location when any seizure occurred and - if different - its location when the action is filed;
>
> (e) identify the statute under which the forfeiture is action is brought; and
>
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

These are the particularity standards by which a civil forfeiture complaint are properly tested. To the extent that a statute is inconsistent with those standards, the Rule trumps. *See* 28 U.S.C. § 2072 ("All laws in conflict with [the rules of practice and procedure] shall be of no further force or effect after such rules have taken effect."); *Griffith Co. V. N.L.R.B.*, 545 F.2d 1194, 1197 (9th Cir. 1976) ("[S]tatutes are superseded by conflicting federal rules."). Thus, to the extent that § 922 (d)(2)(C) ever operated as a pleading requirement (and the government contends that it did not), that requirement was superseded by Rule G(2).

Rule G also specifically addresses the circumstances under which a complaint may be dismissed (or, by implication, otherwise

disposed of at the pleading stage), as does 18 U.S.C. § 983 (enacted as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA")), which also governs civil forfeiture actions. Rule G(8)(b)(ii) and § 983(a)(3)(D) provide that a civil forfeiture complaint may not be dismissed "on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." These provisions were enacted in reaction to pre-CAFRA dismissals at the pleading stage of civil forfeiture cases by courts applying Supplemental Rule E.[5] *United States v. Lopez-Burgos*, 435 F.3d 1, 2-3 (1st Cir. 2006) (CAFRA raised the government's burden of proof at trial but relaxed the pleading requirements).[6]

For these reasons, to the extent that Claimant argues that the Complaint here fails to allege facts with sufficient particularity, or which are not sufficient to establish forfeitability of the defendants by clear and convincing evidence, those arguments are foreclosed by these provisions,

---

[5] Specifically, Rule G(2) was intended to codify the Fourth Circuit's decision in *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002), in which it interpreted the "particularity requirement" in Supplemental Rule E(2) which was supplanted by Rule G(2)(f). Rule G, Advisory Committee Notes to subdivision (2); *United States v. $79,650*, 2009 WL 331294, at *3 (E.D. Va. 2009); *United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F.Supp.2d 1, 16 (D.D.C. 2008)

[6] While CAFRA was a major reform bill, it was not, as some have suggested, intended to diminish or debilitate the government's civil forfeiture authority. CAFRA "was not designed to emasculate federal civil forfeiture efforts," but to make civil forfeiture "fairer . . . and an even stronger law enforcement tool." H.R. Rep. 105-358(I), at 27 (1997). The relaxation of the pleading requirement is an example of that design.

which make it clear that the government's pleading burden is not a difficult one, and that the government is not required to satisfy its ultimate burden of proof based on the allegations of the complaint. *United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004) ("The government is not required to prove its case simply to get in the courthouse door.")

Rather, the government need only allege facts sufficient to "support a reasonable belief that the government will be able to meet its burden of proof at trial." In the context of this motion, the question is whether, taking all of the government's allegations as true and drawing all reasonable inferences in the government's favor, the facts support a reasonable belief that the government can satisfy its burden. A fair reading of the Complaint shows that it satisfies that standard. Should the Court conclude that it does not, the government should be given an opportunity to amend the complaint. *United States v. All Funds . . . Held in the Name of Kobe Alexander*, 2007 WL 2687660, at *14 (E.D.N.Y. 2007).

b. <u>The allegations of the Complaint are sufficient to state a claim</u>

Here, the government has alleged that Lock, Stock & Barrel made numerous sales of firearms and ammunition to a convicted felon who was prohibited from possessing firearms under federal law. These sales were made with Claimant in the relatively small store within earshot of the transaction and, in some cases, participating in the sale. On at least one occasion, Claimant personally helped the straw purchaser complete the Form 4473 for

the sale of a firearm to the felon. During the course of this transaction, the Claimant made several statements indicating that he knew other firearms had been sold to the convicted felon and indicated a willingness to sell the felon additional firearms in the future.

When selling the firearm to the prohibited buyer in the transaction described in the complaint, Mitchell is not alleged to have placed any limitation or restriction on what type of firearm could be purchased. Mitchell allowed CI-1 to select whatever firearm he wanted, and later asked him if the selected firearm was the only one CI-1 wanted to buy. In other words, the reasonable inference to be drawn from the allegations of the Complaint - to the extent that it is not obvious from the totality of the allegations - is that Mitchell's entire inventory was available to CI-1 (and other prohibited persons) for purchase. Insofar as such purchases are explicitly forbidden under the GCA, Mitchell's willingness to sell any firearm in his inventory to a prohibited person, and his actual sale of a firearm to such a person, means that all of the firearms in his inventory were intended to be used by Mitchell in violation of 18 U.S.C. § 922(d) (sale to prohibited person).

The Complaint alleges sufficient facts to establish a reasonable belief that the Government will be able to prove at trial that all of the defendant firearms and ammunition were intended to be used in a violation of 18 U.S.C. § 922(d). A reasonable inference can be drawn from the allegations of the Complaint that Claimant or his employee (with Claimant's knowledge) regularly transferred firearms and ammunition to one

or more convicted felons in violation of § 922(d)(1). The felon CI working with ATF was able to buy handguns, long guns, and different calibers of ammunition, as well as multiple firearms at one time. It is reasonable to infer that the felon working with ATF was not alone in his success. In fact, there is a specific allegation that CADOJ had provided information to ATF about other suspected straw sales made by Lock, Stock & Barrel.[7]

2. *The Authorities Relied Upon By Claimant Are Distinguishable*

The clear pattern of illegal sales here is more egregious than the conduct in *United States v. Eighty-Six Firearms and Twenty-Two Rounds of Ammunition*, 623 F.2d 643 (10th Cir. 1980). There, ATF seized and sought to forfeit the firearms inventory of a dealer who had unlawfully sold handguns to undercover agents on two occasions. The district court permitted the forfeiture of all of the handguns, but denied forfeiture of the long guns. *Id.* The Court of Appeals held that all of the firearms should have been forfeited (*id.* at 645), reasoning that although the agents purchased only handguns, there was "little reason to doubt that the long guns would willingly have been sold to the agents if they had asked." *Id.*

[7] The entire purpose of having a straw purchaser fill out the ATF Form 4473 is to mask the illegal sale. The penalties for transferring a firearm to a felon without doing the required paperwork are not significantly different than conducting a straw purchase to the prohibited person. The primary benefit of using straw purchasers is to make the illegal sales appear legitimate. Because Lock, Stock & Barrel made its illicit sales using straw buyers, it is virtually impossible to determine how many prohibited persons acquired firearms from the FFL.

In reaching this conclusion, the court cited *United States v. One Assortment of 12 Rifles and 21 Handguns*, 313 F.Supp. 641 (D.C. Fla. 1970), which also involved the seizure of the inventory of a dealer engaged in illegal sales. In *12 Rifles*, however, the dealer was unlicensed, and the court ordered the forfeiture not only of the firearms sold illegally, but all firearms displayed for sale, reasoning that the unlicensed dealer would have sold all of the firearms if he had had the chance. *Id.* 642. As a result, all of the firearms were "involved in or intended to be used in" violation of 922(a)(1)(A). *See also United States v. Approximately 627 Firearms More or Less*, 589 F. Supp. 2d 1129 (S.D.Iowa 2008); *United States v. One Assortment of 89 Firearms*, 511 F. Supp. 133 (D.S.C. 1980). Here, as in *Eight-Six Firearms* and *12 Rifles*, it appears clear that Claimant would have sold any or all of the firearms and ammunition in his inventory to the felon so long as there was an associate willing to act as a straw purchaser.[8]

---

[8] As discussed in more detail below, nothing in the Firearm Owners' Protection Act ("FOPA"), which amended the Gun Control Act, including § 924(d), undermines the holding in *Eighty-Six Firearms*, which Claimant contends is at odds with *United States v. One Assortment of Seven Firearms*, 632 F.2d 1276 (5th Cir. 1980). He argues that FOPA addressed this purported "split in the circuits." Memorandum at 5. However, none of the legislative history cited by Claimant indicates the FOPA amendments were aimed at this supposed split, and the two opinions are not materially inconsistent.

In *Seven Firearms*, the court held that firearms subject to forfeiture must be "reasonably identified to the violation, or in this case, the sale. By holding identification is a necessary indicator of intent, we give meaning to the words 'intended to be used in ... any violation,' while ensuring that portions of a firearm dealer's inventory that are unrelated to a given violation are not swept away by enforcement officers." *Id.* at

Claimant also relies heavily on *United States v. 1,922 Assorted Firearms*, 330 F. Supp. 635 (E.D. Mo. 1971). However, as the Court noted in *Eighty-Six Firearms*, reliance on *1,922 Assorted Firearms* is "futile." *Eighty-Six Firearms*, 623 F.2d at 644. The court in *1,922 Assorted Firearms* held that the Government failed to meet its burden of proof in showing the dealer had any intent to violate the federal firearms laws. *1,922 Assorted Firearms*, 330 F. Supp. at 642; *Eight-Six Firearms*, 623 F.2d at 644. The illegal sales at issue in that case were made by a clerk without the knowledge of the owner, which is not the case here. Even the *1,922 Assorted Firearms* court noted that with different facts, "a dealer's entire stock of goods may be subject to forfeiture." *1,922 Assorted Firearms*, 330 F. Supp. at 641.

3. *The Legislative Amendments to § 924 Do Not Affect the Analysis Here*

Claimant devotes an inordinate amount of attention to the FOPA, attempting to link the passage of that legislation to *1,922 Assorted Firearms* in an attempt to cast FOPA as prohibiting the government from seeking the forfeiture of an entire inventory. In so doing, Claimant overstates the effect and intention of FOPA. Nothing in the FOPA amendments to § 924(d) requires the dismissal of this action. Claimants cite Senate Report 98-583 in support of their contention that FOPA intended to "preclude"

---

1279. But the court stopped short of addressing what standards should be applied to determine which firearms in an inventory were intended to be used in any particular offense. It simply found that the seven firearms at issue, which had been unlawfully purchased but not delivered, could be forfeited to the Government. That was the extent of the issue before it.

forfeiture of entire inventories, but there was no such intent. The government notes that, in interpreting a statute, a court should go no further than the plain language of the statute unless that language is ambiguous.[9] There is no ambiguity here, and Claimant should not be allowed to suggest ambiguity through selective citation to legislative history. While FOPA narrowed the scope of forfeiture under the GCA -- excluding nearly all of the grounds relied upon by the government in *1,922 Assorted Firearms*, for example -- the amendments were not aimed at protecting rogue dealers like Claimant.[10] FOPA represented a deliberate choice by Congress to permit the continued forfeiture of firearms in cases such as this one. Moreoever, if Congress's intent in enacting the FOPA was as specific as Claimant suggests -- to prohibit the government from forfeiting entire inventories on the basis of exemplar transactions -- it certainly would have

---

[9] Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980) ("The starting point for interpreting a statute is the language of the statute itself. Absent a clear expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."); United States v. Johnson Controls, Inc., 457 F.3d 1009, 1014 (9th Cir. 2006).

[10] Far from intending to prohibit ATF from going after dealers like Mitchell, the legislative history of FOPA demonstrates that Congress wanted ATF to focus its enforcement efforts on the very types of activity alleged in the Complaint. For example, the Senate Report on a bill that was a predecessor of FOPA quoted from a Judiciary Subcommittee Report that concluded "Although Congress adopted the Gun Control Act with the primary object of limiting access of felons and other high-risk groups to firearms, the overbreadth of the law has led to the neglect of precisely this area of enforcement...[ATF's] own figures demonstrate that in recent years the percentage of its arrests devoted to felons in possession and persons knowingly selling to them have dropped from 14 percent down to 10 percent of their firearms cases[.]" S. Rep. 97-476, 97th Cong., 2d Sess., 15 (June 8, 1982)(emphasis added).

included specific language to carry that intent into effect. The lack of any statutory language suggesting such intent is dispositive of Claimant's argument.

Prior to FOPA, the Government could forfeit any firearm or ammunition "intended to be used" in a violation of *any* provision of the GCA, its regulations (including record-keeping violations) or other criminal statute. FOPA restricted forfeiture to situations where the firearm and/or ammunition was intended to be used in connection with a smaller group of crimes, and raised the standard of proof to clear and convincing evidence. For the crimes that remained, which include § 922(d), the language establishing forfeitability remained unchanged.

This choice was deliberate. A prior draft of the bill would have amended the GCA to remove forfeiture authority for firearms intended to be used in any crime. In a recognition of legitimate law enforcement interests in seizing firearms intended to be used in serious crimes the language was amended to permit the government to continue to forfeit firearms intended to be used in "clearly criminal and dangerous activities," including violations of § 922(d). S.Rep. No. 98-583, 98th Cong., 2d Sess., 24-25 (August 8, 1984). Accordingly, any firearm or ammunition "intended to be used" in a violation of § 922(d) was subject to forfeiture both before and after FOPA.

Claimants correctly note that *United States v. Fifty-Two Firearms*, 362 F. Supp.2d 1308 (M.D. Fla. 2005), applies the GCA as amended by FOPA, but it is the facts and not the revised statutory language that distinguish the instant case from *Fifty-Two Firearms*. In *Fifty-Two Firearms* the government alleged that

an unlicensed dealer sold one shotgun to a felon. *Id.* at 1313-14. Based on that single allegation, the Court was unable to find that the unlicensed dealer intended to sell all of his inventory to the felon. *Id.* The allegations here are far more broad.

4. *Claimant's Construction of § 924(d) Would Render Portions of the Statute Meaningless*

Finally, under Claimant's reading of 924(d), only firearms actually transferred to prohibited persons could be forfeited by the government despite the language that specifically permits the forfeiture of firearms "intended to be used" in violations of § 924(d). The effect of this reading would be to permit dealers like Mitchell to maintain a well-stocked inventory and offer it for sale to prohibited persons knowing that only the firearms actually sold -- for which Mitchell has already been paid -- could be seized by the government. The rest of the inventory could be maintained and sold to the next prohibited person who walked in the door at no financial risk to the dealer. This renders the forfeiture provision meaningless, which is to be avoided. *TRW, Inc. V. Andrews*, 534 U.S. 19, 31 (2001) (It is a "'cardinal principle of statutory construction' that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant.") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

5. *The Allegations in Count One of the Complaint Are Sufficient to Allege a Violation of 18 U.S.C. § 922(d)*

Claimant also argues that the government cannot establish § 922(d)(1) liability by asserting that the purchaser of the

firearms and ammunition was a "convicted felon." Claimants accurately point out that the statutory prohibition does not specifically refer to "felons," but rather to individuals who have been "convicted in any court of a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(d)(1). It is common, however, to refer to this particular prohibition as applying to convicted "felons." *See, e.g.*, Holbrook, Stephen P., *Firearms Law Desk Book* § 2:10, p. 109 (Thomson/West 2006)(referring to the exact same prohibition found in § 922(g)(1) as "the archetypical 'felon-in-possession' prohibition").

Moreover, the Complaint does not limit its references to the purchasers to "convicted felons." It also describes their prohibited status under the firearms laws. *See*, Complaint at ¶¶14 ("firearms that could not lawfully be sold to the purchasers because they were prohibited from receiving or possessing firearms under federal law") and 17 ("when CI-1 discussed his felony conviction and his prohibited status"). In so doing, the Complaint makes clear that the relevant purchaser is not just a felon, but one who is prohibited from possessing firearms under federal law. Thus, the Complaint here goes further than the one found lacking in *United States v. Fifty-Two Firearms*, 362 F.Supp.2d 1308, 1314 (M.D. Fla. 2005), which alleged only that the informant was a "convicted felon."

The complaint also alleges that on multiple occasions, Lock, Stock & Barrel permitted the straw purchase of a firearm on behalf of a convicted felon. *See*, *e.g.*, Complaint at ¶¶ 16, 17, 19-22. The circumstances of the straw purchases outlined in the

complaint make it clear that the transactions were being done with a straw purchaser because the real purchaser was prohibited from receiving or possessing firearms. Should the court find that this argument is well-taken, amendment will obviously cure any defect.

## IV.

## CONCLUSION

For all of the reasons stated herein, Claimant's motion should be denied in its entirety.

DATED: August 19, 2010

ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

/s/ Steven R. Welk
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

Attorneys for Plaintiff
United States of America